**WO** NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Regina Pangerl, | No. CV-14-00836-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Peoria Unified School District, | |
| Defendant. | |

At issue is an administrative law judge's ("ALJ") denial of Plaintiffs' Due Process Complaint under the Individuals with Disabilities Education Act ("IDEA"). Plaintiff Regina Pangerl filed a First Amended Complaint (Doc. 40, FAC) with this Court seeking judicial review of that denial, and the Court now considers Plaintiff's Trial Brief (Doc. 72, Pl.'s Br.), Defendant Peoria Unified School District #11's ("the District") Opening Brief (Doc. 73, Def.'s Br.), Plaintiff's Response Brief (Doc. 74, Pl.'s Resp.), and Defendant's Response Brief (Doc. 75, Def.'s Resp.). The Court finds this matter appropriate for decision without oral argument. *See* LRCiv 7.2(f).

**I.    BACKGROUND**

Plaintiff first filed a Complaint (Doc. 1) in this action on April 21, 2014, raising a claim against Defendant to appeal the ALJ's denial of certain aspects of her Due Process Complaint[1], and the Court set a briefing schedule on October 27, 2014 (Doc. 19). On

---

[1] Both Plaintiff Regina Pangerl and her husband—who is not a party to this lawsuit—were plaintiffs in the proceedings before the ALJ below.

January 26, 2015, Plaintiff filed a Motion to Amend the Complaint (Doc. 29), requesting leave to add claims against Defendant under the Rehabilitation Act (Count 2), the Americans with Disabilities Act (Count 3), and Arizona law (Count 4), thus changing the complexion of this case from the appeal of an administrative decision under IDEA to one that includes federal and state law claims to be resolved for the first time by the Court. While granting the Motion to Amend, the Court concluded that it would resolve the appeal (Count 1) before addressing the new claims. (Docs. 35, 38, 39.) Having received the parties' briefs, the Court now resolves Count 1.

In the first cause of action of the FAC, the operative pleading, Plaintiff raises a claim against the District on behalf of herself and her incapacitated daughter, T.P. ("Student")[2], to appeal an administrative decision under IDEA, 20 U.S.C. § 1415(i)(2). (Doc. 40, FAC ¶¶ 1, 66–68.) Plaintiff alleges Student has learning disabilities and the District failed to provide her with a Free Appropriate Public Education ("FAPE") from 2010 to 2013, as required under IDEA, by among other things failing to properly develop and design an Individualized Education Program ("IEP"), failing to provide the requisite speech and math services, failing to provide an appropriate plan to allow Student to transition out of high school, and failing to provide Extended School Year ("ESY")

---

[2] The Court notes that although Plaintiff alleged in the FAC that T.P. is a "minor" (FAC at 1), she also alleged that T.P. was born on April 26, 1992 (FAC ¶ 3), making T.P. 24 years old at present and in any event the age of majority throughout this litigation. Plaintiff also alleges that T.P. is "incapacitated" (FAC ¶ 3), but that is of course distinct from being a "minor." Nonetheless, Plaintiff filed this lawsuit raising claims on behalf of her daughter—presumably as a representative of an incompetent person under Federal Rule of Civil Procedure 17(c)—but identifying her daughter only by the initials T.P. While Plaintiff would have been justified in doing so under Federal Rule of Civil Procedure 5.2(a) if her daughter was indeed a minor, the Court is aware of no rule mandating identification of incompetent persons by their initials. A party's "use of fictitious names runs afoul of the public's common law right of access to judicial proceedings." *Does I thru XXII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000). The Court thus permits the use of fictitious names for parties to a lawsuit only upon a showing of necessity to, for example, "protect a person from harassment, injury, ridicule or personal embarrassment." *Id.* at 1068. Such necessity is not presumed. Thus, as this litigation continues, the Court will require Plaintiff to either identify her daughter by her real name, *see* Fed. R. Civ. P. 10, or make the showing required to proceed with a fictitious name.

1  services. (FAC ¶¶ 14–19, 23, 67.) On January 13, 2013, Plaintiff filed a Due Process
2  Complaint with the Arizona Department of Education, Exceptional Student Services,
3  Dispute Resolution Unit. (FAC ¶ 20.) ALJ Eric A. Bryant held hearings on the Due
4  Process Complaint between September 3, 2013, and October 8, 2013, and issued a
5  Decision on March 18, 2014, ordering the District to provide Student with an additional
6  40 hours of special education math instruction but denying all other requested relief.
7  (FAC ¶¶ 21, 25, 27–28.)

8  Plaintiff alleges the ALJ erred by, among other things, considering irrelevant or
9  extrinsic evidence and disregarding relevant evidence, finding the transition plan in the
10 IEPs to be appropriate, finding the District properly implemented most aspects of the
11 IEPs, finding that the District did not significantly impede parental participation in the
12 IEP by continuing an IEP meeting after the departure of Plaintiff and her husband
13 ("Parents"), and finding the District provided Student with a FAPE over the relevant
14 period with the exception of math instruction. (FAC ¶ 68.) Plaintiff requests that the
15 Court vacate the ALJ's March 18, 2014 Decision, find that the District denied Student a
16 FAPE, award compensatory education services and transition services for the 2011-2013
17 school years, and award Plaintiff her expenses, attorneys' fees, and costs in enforcing
18 Student's special education rights. (FAC at 22–23.)

19 The ALJ Decision in this case is a 42-page order setting forth the witnesses,
20 evidence, and issues at the hearing along with detailed findings of fact. (Doc. 40-1, Ex. E,
21 ALJ Decision ("ALJ") at 1–42.) The ALJ states he considered the entire record, including
22 all the testimony and every exhibit. Because the Court finds the ALJ was thorough and
23 careful in his findings, the Court concludes they are entitled to significant weight. *JG v.*
24 *Douglas Cnty. Sch. Dist.*, 552 F.3d 786, 793 (9th Cir. 2008).

25 Plaintiff does not dispute the factual findings of the ALJ, but rather, only disputes
26 the ALJ's conclusions of law. (Pl.'s Resp. at 7.) Therefore, the Court only briefly
27 summarizes the relevant facts for context and disjointly calls out only the facts directly
28 addressed by either Plaintiff or Defendant.

In January 2011, Student attended New Way Academy ("NWA"), a school for students with learning disabilities, because of her speech/language impairments and learning disabilities in the areas of listening comprehension, reading comprehension, reading fluency, math calculation, and math reasoning. (ALJ at 6 ¶ 1.) The District created IEP plans for each academic year from 2010 to 2013, which contained prescribed minutes per month of specialized instruction. (ALJ at 7–23 ¶¶ 2–38.) Plaintiff's issues with the District first arose in February 2011 when Parents ceased speech therapy for Student after Student developed issues with the District's two speech therapists. (ALJ at 12 ¶¶ 12–13.) At the end of December 2011, the IEP team changed Student's placement from NWA to a public high school within the District. (ALJ at 17 ¶ 21.) Upon switching schools, Student's new schedule deprived her of 90 minutes per day of special education instruction in math for one semester as required by her existing IEP. (ALJ at 17 ¶ 22.) During the course of the twelve-day hearing, the ALJ heard testimony from eight expert witnesses. (ALJ at 25 ¶ 40.) Specifically, in regards to the adequacy of the speech and language services, the ALJ heard from Ms. Carahaly, a witness for Plaintiff, as well as three speech pathologists who testified on behalf of the District. (ALJ at 25–26 ¶¶ 41–42.)

Ultimately, the ALJ rejected all ten of Plaintiff's claims as follows: 1) Student's 2010, 2011, and 2012 IEPs did not fail to provide a FAPE; 2) the District did not fail to implement's Student's 2010 and 2011 IEPs by failing to implement her transition plan; 3) Student's 2010, 2011, and 2012 IEPs had measurable speech goals; 4) the District did not violate IDEA by not providing an alternate speech therapist in 2011 as requested by Parents; 5) Student's 2011 IEP provided adequate speech therapy minutes; 6) Plaintiff failed to prove that the amount of speech services provided by Student in the 2010 and 2011 IEPs was determined without meaningful participation of Parents; 7) the District did not materially fail to provide speech services to the Student when it failed to provide 7% of the promised speech services; 8) the District did not fail to provide Student with the amount of reading and writing instruction required by the 2011 IEP; 9) the District did

1  not violate IDEA by continuing an IEP planning meeting in November 2012 after Parents
2  left the meeting early; and 10) the District did not err in determining that Student did not
3  qualify for ESY services in Summer 2013. (ALJ at 33–39.) The ALJ found only one
4  violation of IDEA—the District failed to provide required math instruction in Fall
5  2012—and concluded that 40 hours of one-on-one math instruction was adequate to
6  compensate Student for that loss. (ALJ at 40–41.)

       A dispute between the parties centers around the events of an IEP planning meeting that took place in November 2012, when Student's IEP team met to formulate the 2013 IEP. (ALJ at 18–19 ¶ 26.) The District scheduled the meeting for two hours. (ALJ at 18–19 ¶ 26.) Plaintiff and her two advocates, including an educational consultant, attended the meeting, which also included Student for part of the meeting and the District's special education representatives. (ALJ at 18–19 ¶ 26.) At the beginning of the meeting, Plaintiff's educational consultant stated that she could only stay for the allotted two hours. (ALJ at 19 ¶ 27.) After two hours passed, Plaintiff's educational consultant suggested reconvening the meeting at a later point to continue the ongoing discussion. (ALJ at 19 ¶ 27.) The District representative stated that the IEP team would be reconvening at a later time to make addenda to the IEP, but that the IEP team would finish the IEP during the current meeting. (ALJ at 19–20 ¶ 27.) Parents and their two advocates left the meeting, while the remainder of the District IEP team completed the IEP. (ALJ at 20 ¶ 28.) According to the testimony of the District representative, the IEP team needed to complete the IEP that day because the previous IEP would expire in a few days. (ALJ at 20 ¶ 28.) The District representative testified that the District IEP team planned to reconvene to re-address any ongoing concerns and to amend the IEP. (ALJ at 20 ¶ 28.) The IEP team including Parents met again in January and February 2013, during which time the team made changes to the 2013 IEP. (ALJ at 21–23 ¶¶ 33–34, 36.)

       Another point of issue between the parties pertains to the testimony about transition services given by an expert for Plaintiff and an expert for the District. Gary Green, Ph.D., testified on behalf of Plaintiff and Rick Dunn testified on behalf of the

1 District. (ALJ at 26 ¶ 43.) The ALJ found both witnesses to be credible but gave more weight to the testimony of Mr. Dunn. (ALJ at 26 ¶ 43.) The ALJ reasoned that Dr. Green had previously testified that Student's 2010 and 2011 transition plans in the IEPs were inadequate but subsequently backed away from this assertion upon cross-examination when he reviewed evidence of the content of the courses that Student took. (ALJ at 27 ¶ 44.) On the other hand, the ALJ found Mr. Dunn to be "more familiar with the coursework and the process that Respondent School District uses to provide transition services." (ALJ at 27 ¶ 45.) After recounting the testimony of both experts on transition planning, the ALJ concluded that the "IEPs were poorly written," but that nevertheless, "transition assessments were given prior to and throughout the period at issue . . . ." (ALJ at 28 ¶ 47.)

In the FAC, Plaintiff asserts that the ALJ committed twenty-five errors. (FAC at 19–22.) In her Opening Brief, however, Plaintiff presents and addresses only six questions for judicial review. (Pl.'s Br. at 10–25.) Any errors listed in the FAC but not raised in Plaintiff's Opening Brief are deemed abandoned and waived for failure to brief the arguments. *See M.M. v. Lafayette Sch. Dist.*, 767 F.3d 842, 861 (9th Cir. 2014), *as amended* (Oct. 1, 2014) ("The parents fail to brief the stayed Department of Education investigation theory, and it is therefore waived."); *United States v. Williamson*, 439 F.3d 1125, 1137–38 (9th Cir. 2006) (holding that issues raised in an appellate brief but not supported by argument are abandoned).

## II.     LEGAL STANDARD

Under IDEA, any aggrieved party may bring a civil action in federal district court after receiving the final decision of an ALJ. 20 U.S.C. § 1415(i)(2)(A). The moving party bears the burden of proving the ALJ's decision was not met by a preponderance of the evidence. *L.M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900, 908–10 (9th Cir. 2008). The district court "shall receive the records of the administrative proceedings," can under certain circumstances hear additional evidence, and "basing its decision on the

preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C).

In a judicial proceeding under IDEA, the Court reviews *de novo* the question whether a school district's proposed IEP provided a FAPE, but reviews the ALJ's findings of fact only for clear error. *Timothy O. v. Paso Robles Unified Sch. Dist.*, 822 F.3d 1105, 1118 (9th Cir. 2016). Mixed questions of law and fact are reviewed *de novo*, unless the question is primarily factual. *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1310 (9th Cir. 1987). Courts must not "substitute their own notions of sound educational policy for those of the school authorities which they review." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley,* 458 U.S. 176, 206 (1982). However, it is a matter of district court discretion to decide the degree of deference to give the ALJ's determination. *Ojai Unified Sch. Dist. v. Jackson,* 4 F.3d 1467, 1474 (9th Cir. 1993). When reviewing the administrative record as a whole, courts must give "due weight" to administrative bodies, a standard that is less deferential than judicial review of other agencies. *Timothy O.*, 822 F.3d at 1118 (internal citation omitted).

### III. ANALYSIS

#### A. Alleged Procedural Violations

##### 1. Parents' Participation at November 2012 Meetings

Plaintiff claims that the ALJ erred in finding that Parents were full participants in the IEP process. (Pl.'s Br. at 10.) Plaintiff alleges that the District's decision to continue the November 2012 IEP meeting without the presence of Parents infringed on their opportunity to participate in the IEP formation, thus denying Student a FAPE. (Pl.'s Br. at 10.) "Parental participation in the IEP and educational placement process is critical to the organization of the IDEA." *Doug C. v. Hawaii Dept. of Educ.*, 720 F.3d 1038, 1043 (9th Cir. 2013) (citations omitted). In fact, the attendance of the parents at IEP Team meetings "must take priority over other members' attendance." *Id.* at 1045. Procedural inadequacies that seriously infringe the parents' opportunity to participate in the IEP

1 formulation process result in the denial of a FAPE. *Id.* at 1043. However, harmless
2 procedural errors do not constitute a denial of a FAPE. *Capistrano*, 556 F.3d at 910.

3        Plaintiff alleges that the ALJ's ruling penalizes Student by blaming Plaintiff for
4 not participating in the November 2012 IEP meeting after the meeting ran longer than the
5 scheduled two hours. (Pl.'s Br. at 13–14.) Citing *Doug C*, Plaintiff argues that the District
6 IEP team acted unreasonably when it completed the IEP after Plaintiff's departure in
7 order to comply with an expiring deadline. (Pl.'s Br. at 15.) On the other hand, the
8 District argues that, unlike the parents in *Doug C*, Plaintiff participated in the IEP
9 meeting and ultimately impeded the IEP completion. (Def.'s Br. at 20.) Because both
10 sides rely on *Doug C*, the Court analyzes that case in more detail.

11        In *Doug C*, a plaintiff father sued the school district for denying his son a FAPE
12 under IDEA when the district held an IEP planning meeting without the father's
13 participation. 720 F.3d at 1040–41. The father and the district representatives
14 communicated back and forth while trying to schedule an IEP meeting and ultimately
15 agreed on a date after two other rescheduled meetings. *Id.* at 1041–42. On the morning of
16 the scheduled meeting, the father called the district to cancel the meeting due to an
17 illness, but tried to reschedule the meeting for a third time. *Id.* at 1042. After the father
18 failed to commit to a specific date, the district representatives proceeded with the
19 scheduled meeting on that day because thirteen employees had already rearranged their
20 schedule three times to accommodate the father. *Id.* at 1042. Thus, the district team
21 finalized the IEP without the father's participation. *Id.* The IEP team had a follow-up
22 meeting a month later during which time they reviewed the IEP with the father, but
23 ultimately made no changes to the IEP because the father had no substantive input. *Id.*

24        The *Doug C* court held that the district's actions were a procedural violation that
25 denied the student a FAPE. *Id.* at 1047. The court reasoned that IDEA requires school
26 districts "to include the [parents in an IEP meeting] unless they affirmatively refused to
27 attend." *Id.* at 1044 (citation omitted). The court reasoned that the father did not
28 affirmatively refuse to attend but rather vigorously objected to the district holding an IEP

- 8 -

meeting without him and asked the district to reschedule the meeting. *Id.* at 1044. The court noted that parental obstinance is not an excuse for a district's failure to comply with IDEA's procedural requirements. *Id.* at 1045. Furthermore, a district cannot exclude a parent from an IEP meeting in order to prioritize its representatives' schedules. *Id*. at 1045–46. The court also rejected the district's argument that the meeting could not be rescheduled because of the impending annual IEP deadline because, as the court reasoned, the district is not required to cease providing services to the student if the annual IEP review is overdue. *Id.* In a situation where the district must choose between complying with a deadline and complying with the parents' schedule, "the agency must make a reasonable determination of which course of action promotes the purposes of IDEA and is least likely to result in the denial of a FAPE." *Id.* at 1046. Finally, the court rejected the district's argument that the follow-up IEP meeting with the father satisfied the requirements of IDEA. *Id.* at 1047.

The present case is somewhat similar to *Doug C*. But unlike the father in *Doug C*, Plaintiff and her advocates were present at the November 2012 IEP meeting, stayed for the full two hours that the meeting was intended to run and only left when their advocate had to leave. (ALJ at 19 ¶ 27.) Although Plaintiff suggested rescheduling the balance of the meeting, the District representatives finished the balance of the IEP without the presence of Parents. (ALJ at 20 ¶ 28.) As in *Doug C*, the District cited the expiring IEP as a reason why the team needed to complete the balance of the IEP in the absence of Parents. (ALJ at 20 ¶ 28.) The District stated it would make any required addenda to the IEP and, in fact, did so immediately upon the start of the 2013 IEP year. (ALJ at 21–23 ¶¶ 33–34, 36.)

Importantly, in *Doug C*, the father never participated in the meeting, and here, Plaintiff actively participated in the majority of the meeting along with two representatives. (ALJ at 38 ¶ 30.) And, unlike the father in *Doug C* who provided no substantive input during an after-the-fact meeting that resulted in no changes to the IEP, Plaintiff participated in two follow-up meetings at the start of the IEP year that led to

changes and addenda to the IEP. (ALJ at 21–23 ¶¶ 33–34, 36.) Finally, unlike the IEP plan in *Doug C*, which was fully complete, the District representatives completed an IEP that included only "a rudimentary transition plan" and had already agreed at the meeting to reconvene to rewrite the transition component of the IEP. (ALJ at 20 ¶ 28.) The Court finds these distinctions significant. The District properly considered Plaintiff's substantial participation in the IEP, the fact that the goal of the meeting was simply the development of a rudimentary transition plan, and the immediate opportunity for Plaintiff to make addenda in determining that the best course of action to promote the purposes of IDEA was to complete the IEP meeting.

While IDEA is particularly protective of the parents' right to participate in the child's IEP because they can "provide information about the child critical to developing a comprehensive IEP and which only they are in a position to know," *Amanda J. ex rel. Annette J. v. Clark Cty. Sch. Dist.*, 267 F.3d 877, 882 (9th Cir. 2012), in this case, the District acted reasonably in protecting Parents' rights. *See Cupertino Union Sch. Dist. v. K.A.*, 75 F. Supp. 3d. 1088, 1102 (N.D. Cal. 2014) (reasoning that "the District made a reasonable determination to offer a revised IEP based on the parental input already received . . . and to invite continued parental input"). As the District points out, (Def.'s Resp. at 5), the other cases Plaintiff cites in support of her argument do not provide the support Plaintiff seeks or represents. Accordingly, the Court does not find that the ALJ erred in finding the District did not deprive Plaintiff of meaningful participation in the IEP planning process.

**2.     Violation of the 75-Day Rule**

Plaintiff claims that the ALJ issued his Decision 159 days after the conclusion of the hearing and 427 days after the filing of the Due Process Complaint in violation of IDEA's 75-day procedural safeguard. (Pl.'s Br. at 24–25.) According to statute, a complaining party must receive a final written decision from a Due Process Hearing within 45 days of the expiration of a 30-day resolution period, or in other words, within 75 days of the filing of the Due Process Complaint. 34 C.F.R. §§ 300.510(b)–(c),

300.515(a). However, the issuance of a final decision beyond the required deadline alone is not a *per se* denial of a FAPE. *Oskowis v. Sedona-Oak Creek Unif. Sch. Dist.*, No. CV-14-08166-PCT-JAT, 2016 WL 1118038, at *9 (D. Ariz. Mar. 22, 2016) (citation omitted). This Court only grants relief if the "procedural error either resulted in a loss of educational opportunity or significantly restricted parental participation." *Capistrano*, 556 F.3d at 910 (citation omitted). In this case, Plaintiff does not point to evidence that Student was denied special education services during the ALJ's delay, thus failing to prove that the procedural error resulted in a loss of educational opportunity.

### B. Alleged Substantive Violations

#### 1. Transition Planning

Plaintiff claims that the ALJ erred in finding that Student's 2010, 2011, and 2012 IEPs offered meaningful educational benefit. (Pl.'s Br. at 19.) Under IDEA and the regulations implementing it, IEPs must contain "appropriate measurable postsecondary goals . . . ; [and] the transition services (including courses of study) needed to assist the child in reaching those goals . . . ." 20 U.S.C. § 1414(d)(1)(A)(i)(VIII). To determine whether a student was denied a FAPE, the Court applies a "meaningful benefit" standard. *Joshua A. ex rel. Jorge A. v. Rocklin Unified Sch. Dist.*, 319 F. App'x 692, 695 (9th Cir. 2009). A student's IEP provides a meaningful benefit when it is appropriately designed and implemented. *J.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 432–33 (9th Cir. 2010). A court must not critique an IEP with the benefit of hindsight; instead, it must evaluate whether the goals and methods were reasonably calculated to ensure that the child would receive educational benefits at the time of implementation. *Anchorage Sch. Dist. v. M.P.*, 689 F.3d 1047, 1058 (9th Cir. 2012).

Plaintiff first[3] claims that the ALJ violated the so-called "snapshot rule," which says that an IEP must not be critiqued in hindsight, but must rather be judged on its

---

[3] Plaintiff briefly mentions that the child with a disability must be present at the IEP meeting related to transition planning, but fails to cogently argue that the child's absence violated IDEA. (Pl.'s Br. at 16–17.) Even if Plaintiff had supported this argument, it would nevertheless fail because IDEA also provides that in the absence of

- 11 -

"goals and goal achieving methods at the time the plan was implemented and ask whether these methods were reasonably calculated to confer [Student] with a meaningful benefit." *Adams v. Oregon*, 195 F.3d 1141, 1149 (9th Cir. 1999). Plaintiff alleges that the ALJ based his decision, in part, on the testimony of Mr. Dunn, an expert witness for the District, who testified that the "process for determining and providing transition services is ongoing and fluid." (Pl.'s Br. at 22 (quoting ALJ at 27 ¶ 45).) In other words, Plaintiff claims that Mr. Dunn looked at subsequent remedial measures to conclude that the IEPs adequately addressed transition planning. (Pl.'s Br. at 22.) Plaintiff's use of an out-of-context quote is a misrepresentation of Mr. Dunn's testimony; Mr. Dunn's statement refers to the fact that the IEP differed each year depending on Student's needs. (ALJ at 27 ¶ 45). The ALJ correctly weighed Mr. Dunn's testimony, which contained specific details about the transition plans including coursework and analysis of how this coursework focused on post-high school skills. (ALJ at 27 ¶ 45). Therefore, the Court finds that the ALJ did not violate the snapshot rule and instead properly evaluated the IEPs to ensure that Student received educational benefits at the time of implementation.

Plaintiff next alleges that the IEPs did not offer Student a meaningful education benefit because they had several design flaws. Plaintiff quotes part of the ALJ's findings of fact, which criticize the transition plan. (Pl.'s Br. at 20–21.) Consequently, Plaintiff claims that the ALJ's conclusion that the IEPs passed legal muster is contradicted by his own findings of fact. (Pl.'s Br. at 20–21.) The Court disagrees. Although the ALJ pointed out several flaws in the transition plans, IDEA does not demand perfection, but rather demands that transition plans be "*reasonably calculated* to confer [Student] with a meaningful benefit." *Adams*, 195 F.3d at 1149 (emphasis added). The ALJ clearly and thoroughly evaluated the IEPs and accurately evaluated the credibility of the transition experts to reach his conclusion. (ALJ at 33 ¶¶ 11–15.) Therefore, the Court defers to the

---

the child, a public agency may take other steps to ensure that the child's interests are considered. 34 C.F.R. § 300.321(b)(2).

ALJ's thorough findings of fact and agrees with the ALJ's conclusion that the IEPs were sufficient to confer a meaningful education benefit. *See Adams*, 195 F.3d at 1150.

Upon review, the Court finds sufficient evidence in the record exists to support the ALJ's findings that Mr. Dunn's testimony was credible and the 2010, 2011, and 2012 IEPs offered Student meaningful education benefits and did not deny Student a FAPE.

### 2. Speech and Language Services

Plaintiff claims that the ALJ incorrectly found Student was provided adequate speech and language services and was not denied a FAPE. (Pl.'s Br. at 23.) To determine whether a student was denied a FAPE, the Court again applies a meaningful benefit standard. *Joshua A.*, 319 F. App'x at 695. A student's IEP provides a meaningful benefit when it is appropriately designed and implemented. *J.W.*, 626 F.3d at 432–33.

Here, Plaintiff alleges that the December 2010 IEP was inappropriately designed because it provided for an excessive amount of speech therapy. In his ruling, the ALJ summarized the testimony of Plaintiff's witness, Ms. Carahaly, who testified about the adequacy of the speech goals written in the December 2010 IEP. (ALJ at 25 ¶ 41.) Additionally, the ALJ summarized the testimony of three speech pathologists who testified on behalf of the District and concluded that the speech services provided were appropriate. (ALJ at 26 ¶ 42.) The ALJ also evaluated the IEPs and concluded that the 2010 IEP had appropriate speech goals. (ALJ at 35 ¶ 18–19.) The ALJ's opinion thoroughly and completely laid out all of the evidence considered and gave specific reasons as to why he gave more weight to the District's witnesses as opposed to Plaintiff's. Therefore, the Court defers to the ALJ's findings and agrees with his decision. *Adams*, 195 F.3d at 1145.

Plaintiff also claims that the District failed to implement the IEPs as written for the 2010-11 and 2011-12 school years. (Pl.'s Br. at 23.) In addressing this claim, the ALJ found that Parents withdrew consent for speech therapy with the District's two speech therapists in 2011 and concluded that Parents were not entitled to a replacement speech therapist of their choice. (ALJ at 35 ¶ 20–21.) The Court agrees because "Plaintiff is not

1 entitled to his choice of service providers" under IDEA. *N.R. ex rel. B.R. v. San Ramon Valley Unified Sch. Dist.*, No. C 06-1987 MHP, 2007 WL 216323, at *7 (N.D. Cal. Jan. 25, 2007); *see also A.B. v. Lawson*, 354 F.3d 315, 330 (4th Cir. 2004) ("The issue is not whether the [parents' program or preferred provider] is better, or even appropriate, but whether [the district] has offered an appropriate program for the child . . . .").

Additionally, the ALJ found that the District failed to provide the required speech services in Fall 2012 but concluded that the missing time—amounting to only 7% of the total required services—did not result in a material failure. (ALJ at 37 ¶¶ 26–27.) Upon review, the Court finds sufficient evidence in the record exists to support the ALJ's conclusion that the District provided adequate speech and language services to Student.

### 3. Math Instruction

Plaintiff claims that the ALJ erred in concluding that 40 hours of one-on-one math instruction was adequate to compensate Plaintiff for the District's failure to implement an IEP in math. (Pl.'s Br. at 23–24.) As outlined in the ALJ's opinion, the District admitted that it failed to provide a semester of math instruction to Student due to an oversight. (ALJ at 37 ¶ 28.) In determining the appropriate remedy for this IDEA violation, the ALJ relied on the record and the expert opinions of Mr. Farrell and Ms. Hare to conclude that compensatory 40 hours of one-on-one instruction were adequate. (ALJ at 37 ¶ 36–37.) Plaintiff now demands 120 hours of total compensatory math instruction based on the number of school days multiplied by the number of missed minutes of math instruction per day. (Pl.'s Br. at 23–24.)

The Court cannot find that the ALJ's decision was incorrect. Under IDEA, "[t]here is no obligation to provide a day-for-day compensation for time missed." *Parents of Student W. v. Puyallup Sch. Dist., No. 3*, 31 F.3d 1489, 1497 (9th Cir. 1994). Instead, compensatory education is an equitable remedy that is determined based on a fact-specific analysis. *Id.* In this case, Plaintiff has failed to provide any objective evidence that 40 hours were inadequate and instead simply makes a conclusory assertion that "the remedy should have more accurately reflected compensation for the education lost by

- 14 -

1  [Student]." (Pl.'s Br. at 24.) The Court agrees with the ALJ's decision, supported by
2  expert testimony, that 40 hours of compensatory one-on-one math instruction was an
3  appropriate remedy.

### 4. Summer 2013 ESY Services

Plaintiff claims that the ALJ erred in finding that Student was not denied a FAPE when ESY services were not offered for Summer 2013. (Pl.'s Br. at 24.) Under IDEA and the regulations implementing it, schools are required to provide ESY services as necessary in order to provide a child with a FAPE. 34 C.F.R. § 300.106(a)(1). A school must provide these services only if the child's IEP team determines that such services are necessary for the provision of a FAPE. *Id.* § 300.106(a)(2). IDEA and its regulations do not set forth the specific factors the IEP team must consider in making this decision. *N.B. v. Hellgate Elementary Sch. Dist.*, 541 F.3d 1202, 1211 (9th Cir. 2008). Because providing ESY is the exception, not the rule, a parent challenging a school's decision about ESY must show that the benefits a disabled child gains during a regular school year will be significantly jeopardized if he/she is not provided with an educational program during the summer months. *Id.*

The only basis for Plaintiff's claim that the ALJ erred in affirming the District's decision on ESY is that the District made that determination after Parents and their advocates left the November 2012 IEP meeting. (Pl.'s Br. at 24.) Plaintiff essentially alleges a procedural violation of IDEA instead of a substantive violation, and the Court already addressed this procedural violation above, concluding the District acted reasonably in protecting Parents' rights in formulating the 2013 IEP.

### IV. CONCLUSIONS

Plaintiff's procedural claims that the District prevented her from participating in the 2013 IEP planning process, (Procedural Claim 1), and that the ALJ's delay in issuing a decision was a denial of a FAPE, (Procedural Claim 2), fail. Plaintiff's claims of substantive IDEA violations related to transition planning, speech and language instruction, and math instruction, (Substantive Claims 1–3), also fail. Finally, the Court

finds that Plaintiff's allegation that Student was denied a FAPE when ESY services were not offered for Summer 2013, (Substantive Claim 4), was already addressed by the Court under Procedural Claim 1 and similarly fails.

**IT IS THEREFORE ORDERED** denying Plaintiff's claims (Doc. 72) pertaining to Count 1 of the First Amended Complaint (Doc. 40) and affirming the March 18, 2014 decision of the Administrative Law Judge.

**IT IS FURTHER ORDERED** that Plaintiff shall either provide a brief by March 1, 2017, justifying the use of the initials T.P. as identification for her daughter in this lawsuit, or use her daughter's real name in all further filings. If Plaintiff files a brief, Defendant may file a response brief by March 10, 2017.

Dated this 15th day of February, 2017.

Honorable John J. Tuchi
United States District Judge